IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AUGUSTINE SIFUENTES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-433-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Augustine Sifuentes, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On May 8, 2015, in the 371st District Court, Tarrant County, Texas, Case Nos. 1391496D (possession of a controlled substance 4-200 grams), 1391497D (unlawful possession of a firearm), and 1391499 (theft of a firearm), Petitioner entered guilty pleas in exchange for the state's waiver of the habitual-offender allegations in two of the cases and a recommendation of concurrent 15-year sentences in all three cases. Petitioner did not appeal his convictions but did challenge his convictions in three state habeas-corpus applications, one for each conviction, which were denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. Petitioner has filed two habeas-corpus actions in this Court, both of which were construed as

challenging all three convictions. Pet. 7, ECF No. 1; Pet., Sifuentes v. Davis, Civil Action No. 4:16-CV-1010-A, ECF No. 1. Having reconsidered the characterization of the instant petition, the Court construes the petition as challenging only Petitioner's conviction for unlawful possession of a firearm in Case No. 1391497D.

## II. ISSUES

Petitioner raises two grounds for relief, wherein he claims (1) he received ineffective assistance of trial counsel because counsel failed to properly investigate the police report, gave erroneous advice, and lied to him about the nature of the offense, and (2) the search of the vehicle in which he was a passenger was illegal in violation of the Fourth Amendment. Pet. 6, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is not barred by the statute of limitations or successive and that Petitioner has exhausted his state court remedies as to the claims presented. Resp't's Ans. 3, ECF No. 14.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)–(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

By entering a knowing, intelligent, and voluntary guilty plea, a criminal defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including ineffective-assistance-of-counsel claims that do not attack the voluntariness of the guilty plea and Fourth Amendment claims. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing, intelligent, and voluntary if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, intelligent, and voluntary it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979).

Petitioner was represented at trial by Ben Leonard and raised various ineffective-assistance-of-trial-counsel claims in his state habeas-corpus applications. The state habeas judge, who also presided over the plea proceedings, held a hearing by affidavit, in which counsel responded to Petitioner's allegations as follows (all spelling, punctuation and/or grammatical errors are in the original):

> I understand [Petitioner's] complaint herein to be that I "rendered ineffective assistance of counsel" by;

3

1) coercing or frightening him into a plea of guilty;
2) failing to investigate the cases;
3) failing to "challenge" the indictment in the theft of firearm case;
4) refusing to go to trial
5) allowing [Petitioner] to plead true to a "habitual offender notice" or failing to notify him that he was pleading true to a "habitual offender notice" in cause number 1391499 (theft of firearm, a state jail felony with a second degree enhancement notice);
6) giving him "erroneous advice;" and
7) "lying" about the nature of his theft of firearm offense.

At the outset, I would note that the entirety of [Petitioner]'s complaint seems to be based in generalized remorse that he pled guilty and a misunderstanding of the indictment in the theft of firearm case.

## I.

**1. Coercing or frightening [Petitioner] into a guilty plea**

I met with [Petitioner] in jail, apart from court appearances, three times for a total of four hours. Additionally, Judge Westfall was generous enough to allow me to meet with [Petitioner] in her courtroom to view videos associated with the cases for a total of two hours and fifteen minutes. At each of these meetings, we discussed the case reports, the evidence, and the merits of the cases, the charges, the possible sentences and the possible dispositions by way of a plea bargain. From the beginning, I told [Petitioner] that I was not there to make him do anything he did not want to do. I told him that my job was to give him information and the benefit of my experience in order to help him make the best decision possible. I told him I would do whatever he instructed me to do so long as it was legal and ethical.

[Petitioner] asked me to seek a bond reduction in his cases and I did. Judge Westfall did reduce the bond in the firearm theft and possession cases and my recollection is that the total amount went from $100,000 to $65,000. I sought and obtained court approval for an investigator and employed Doug Lambertsen a well-respected criminal investigator here in Tarrant County. [Petitioner] gave me permission to discuss the case with his mother, Mary Cantu. I spoke with Ms. Cantu on a number of occasions and I understand Doug Lambertsen spoke with her as well. Ms. Cantu reported to me that she was visiting her son in jail and/or speaking with him on the phone. On 12/15/2014 we received a plea offer 20 years and to waive the habitual offender notices in the possession and firearm possession cases and to proceed on the second degree notice in the firearm theft case.

I specifically told [Petitioner] that standing alone, the firearm cases and the drug

4

possession case were relatively weak, however, if he went to trail the cases were inextricably bound up and together they were likely enough for the state to obtain a guilty verdict. The reason I said this is because he was the last person the owner of the stolen firearms knew to be in the room with firearms and when he was arrested on the drug case, one of the stolen firearms was found in the bag with the drugs. The facts of both cases would have been placed before the fact finder.

I additionally warned [Petitioner] that he may need to testify in his own defense and that if he did so he could be impeached with many of his prior convictions. I further pointed out that if he were convicted his sentence would perforce have to twenty-five years in prison *at a minimum*. I can see how this information might be frightening. I told [Petitioner] at every step on the way that I would be happy to try his case . (I have tried well over 120 serious felony cases to a verdict). Ultimately [Petitioner] told me that he would rather have the certainty of a fifteen year sentence over the very real possibility of a conviction and a minimum sentence if twenty-five years.

## II.

**2) Failing to investigate the cases**

Aside from investigating the backgrounds of the three people in the car with [Petitioner] at his arrest, I asked Doug Lambertsen to interview the victim in the firearm theft case, Daniel C. I understood Daniel C. to be a relative of [Petitioner] and according to [Petitioner] the victim did not want [Petitioner] to be prosecuted. There was no further investigation required. The main task was an analysis of the evidence and an evaluation of the way it would play out at trial. Aside from Daniel C. the witnesses at trial would be police officers or drug analysts.

Doug Lambertsen interviewed [Petitioner], his mother and Daniel C. Doug reported the following to me:

*On December 15, 2014 I received the appointment on [Petitioner]. On that date I reviewed the discovery, ran a criminal history of [Petitioner] and a web search, social media, on [Petitioner].*

*On December 22, 2014 I interviewed [Petitioner] at jail. His explanation for having the gun and drugs was that there were two bags sitting side by side and somebody picked up the wrong bag. He stated the bag that he was found with belonged to his cousin (sic) Daniel C. and his mother could provide his contact information.*

*On January 16, 2015 I made several attempts to contact [Petitioner]'s mother, Marie Cantu, before interviewing her by phone on January 16, 2015. Marie provided me the contact information of Daniel but was unable to provide the contact*

5

*information on [Petitioner]'s sister. Marie was to have [Petitioner]'s sister call me but she never did.*

*On January 16, 2015 I contacted Daniel C. by phone and he informed me that he is an inspector for the City of Dallas and he wanted no part of [Petitioner]'s currant legal issues. He wants his guns back and would not help in any way. Daniel stated that [Petitioner] had a long criminal history and was not to be believed and ended the interview with "I won't help."*

### III.

**3) Failing to challenge the indictment in the theft of firearm case**

The only real way to challenge an indictment is to go to trial; this [Petitioner] did not want to do as is evidenced by his freely and voluntarily given plea of guilty in open court after exhaustive discussions with me and an opportunity to view all of the evidence in the cases. He pled guilty to the three cases and in return received a sentence of fifteen years. That sentence is five years less than the initial offer and ten years less than the statutory minimum in the firearm and drug possession cases should [Petitioner] have been found guilty, as I believed he would. I think this complaint of failure to challenge the indictment may be based in a misunderstanding on [Petitioner]'s part which I will further address in Sec V.

### IV.

**4) Refusing to go to trial**

At no time did I ever refuse to go to trial. To the contrary, I told [Petitioner] repeatedly that if he wanted a trial I could and would do that.

### V.

**5) Allowing [Petitioner] to plead true to a "habitual offender notice" or failing to notify him that be was pleading true to a "habitual offender notice" in cause number 1391499 (theft of firearm, a state jail felony with a second degree enhancement notice)**

Here [Petitioner] evinces a misunderstanding or mischaracterization of the indictment and plea in cause 1391499. This cause is a state jail felony charge of theft of a firearm enhanced by a second degree notice and carries a range of punishment of no less than two and not more than twenty years in the penitentiary. There is no habitual offender notice associated with this case. The only habitual offender notices associated with [Petitioner] were alleged and then later waived in cause numbers

6

1391496 and 1391497. [Petitioner] also received sentences of fifteen years in these causes and the court ordered all three sentences to run concurrently with back time credit to November 6, 2014.

## VI.

**6) Giving [Petitioner] "erroneous advice"**

Without further and more specific allegations as to the nature of the advice [Petitioner] finds "erroneous" I cannot properly address this claim. Read in context, his claim appears refer to his complaint about the theft of firearm case carrying a habitual offender notice to which he pled true. As noted above in V, the notice to which he pled true was a second degree notice, not a habitual notice.

## VII.

**7) "Lying" about the nature of his theft of firearm offense**

Absent further specificity, undersigned Counsel cannot answer this allegation. I can say that I never lied to [Petitioner].

In conclusion I would point out that [Petitioner] gave a recorded, admissible statement to Detective Eubanks of the Hurst police department. In that statement he admitted his fingerprints might be on the weapon because he had handled it in the preceding four days, that he was aware that there were drugs in the laptop bag, that his fingerprints would be on the bags containing the controlled substance and that he had the laptop bag in his possession at a game room earlier on the night of his arrest. He maintained that the laptop, the drugs and the weapon were actually the backseat passenger's (Kelly) but that she would say they were his. I believe that this statement coupled with the evidence in the police report would have resulted in a pretty quick guilty verdict. As to the theft of firearm case, I told [Petitioner] that this case was the weakest but that if we went to trial the state would be going on one of the stronger habitual cases anyway. I asked the state to dismiss the theft of firearm case in return for guilty pleas on the two other case but they refused. I told [Petitioner] that the price of the fifteen years on the habitual cases was a guilty plea in all three. He understood the pros and cons and the deal and [Petitioner] took it after several in depth discussions of the facts and the options. As I told [Petitioner] then and believe today, this was a pretty good plea bargain; not great, but pretty good.

SHR03 44-46, ECF No. 15-5 (record references omitted).

Based on counsel's affidavit, the documentary record, and her own recollection of the plea

proceedings, including Petitioner's testimony and demeanor in court, the state habeas judge entered the following factual findings relevant to the voluntary and knowing nature of Petitioner's pleas, which were later adopted by the Texas Court of Criminal Appeals:

> 20. Hon. Leonard advised [Petitioner] that he was facing a minimum of twenty-five years confinement due to his prior felony convictions.
>
> 21. Hon. Leonard advised [Petitioner] that he was happy to try the case.
>
> 22. Hon. Leonard's advice was the result of reasonable trial strategy.
>
> 23. After considering all of the information, [Petitioner] decided he would rather accept the fifteen year plea offer than face the real possibility of a conviction and minimum twenty-five years in prison.
>
> . . .
>
> 27. Hon. Leonard denies lying to [Petitioner].
>
> 28. [Petitioner] presents no evidence that Hon Leonard lied to him.
>
> 29. [Petitioner] acknowledged by his signature that he understood the written plea admonishments.
>
> 30. [Petitioner] acknowledged by his signature that he was aware of the consequences of his plea.
>
> 31. [Petitioner] acknowledged by his signature that he is [sic] plea was "knowingly, freely, and voluntarily" made.
>
> 32. [Petitioner] acknowledged by his signature that "[n]o one ha[d] threatened, coerced, forced, persuaded or promised" him anything for his plea.
>
> 33. Hon. Leonard acknowledged by his signature that he was satisfied that [Petitioner] was "intelligently, knowingly, and voluntarily" waiving his rights and pleading guilty.
>
> 34. This Court personally admonished [Petitioner], interacted with him, and found that his plea was "intelligently, freely and voluntarily" made.
>
> 35. Hon. Leonard's affidavit is credible and supported by the record.

*Id.* at 86-88 (record references omitted).

Based on its factual findings, the state habeas court concluded that counsel's advice regarding whether Petitioner should plead guilty was the result of reasonable trial strategy; that Petitioner failed to prove counsel refused to go to trial; and that Petitioner failed to prove he was coerced into pleading guilty. *Id.* at 89-90. Petitioner fails to present clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). Thus, this Court must apply the presumption of correctness to the state courts' findings on the issue. Having done so, Petitioner's claims that counsel lied to him and/or gave him erroneous advice to get him to plead guilty are groundless. Petitioner's conclusory assertions, after the fact, are insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state court records. *See Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). It is clear from the record that based on the trial court's and counsel's interaction with Petitioner, both the judge and counsel were under the opinion that Petitioner understood all the circumstances concerning his plea and wanted to proceed with his plea. Petitioner reinforced this belief by executing the written plea admonishments acknowledging that he was aware of the consequences of his plea; that his plea was knowingly, freely, and voluntarily entered; and that counsel "provided me fully effective and competent representation." Petitioner's representations during the plea proceedings "carry a strong presumption of verity," and the official records, signed by Petitioner, his counsel, and the state trial judge are entitled to a presumption of regularity and are accorded great evidentiary value. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974). Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty

9

plea would forgo. *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). Often a criminal defendant will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a defendant does not render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970); *Brady,* 397 U.S. at 749-50.

Because Petitioner's guilty plea was voluntarily, intelligently, and knowingly made, his remaining ineffective-assistance and Fourth Amendment claims are waived.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 14th day of August, 2018.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**